**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

FUNDADOR MORENO MEDINA, ET AL.,

     Plaintiffs

         v.

PEDRO TOLEDO, ET AL.,

     Defendants.

CIV. NO. 09-1491 (PG)

**OPINION AND ORDER**

Plaintiff Fundador Moreno Medina and his consensual partner Ivette Banuchi Rodriguez (hereinafter "Plaintiffs") bring suit for money damages against several on-scene and supervisory officers of the Puerto Rico Police Department ("PRPD") under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments[1] to the United States Constitution, stemming from allegedly unreasonable searches and seizures. Plaintiffs also plead supplementary state law claims actionable under P.R. Laws Ann. tit. 31, §§ 5141-5142. Before the Court is a motion to dismiss (Docket No. 12) under Federal Rule of Civil Procedure 12(b)(6) filed by defendant officers Wilfredo Morales Rivera and Jose A. Morales Vazquez (hereinafter "Defendants")[2] as well as Plaintiffs' opposition thereto (Docket No. 17). For the reasons that follow, the Court **GRANTS** the motion to dismiss.

---

[1] Plaintiffs dropped their claims under the Fifth and Tenth Amendments, alleged in the complaint, in their opposition to the motion to dismiss. (See Opp. Mot. Dismiss ¶¶ 25-26.) Plaintiffs pleaded a First Amendment violation in the complaint but did not articulate or substantiate it with any legal support or authority. Because Plaintiffs did not argue their First Amendment claim and because said claim would be time-barred in any case, as discussed later in this Opinion, the Court need not consider it here.

[2] Additionally, Plaintiffs sued on-scene officers Miguel Arocho Irizarry, Carlos Bonet, Jose Nieves Soler, and Ruben Colon Perez, and supervisory officers Pedro Toledo Davila (the former police superintendent) and Angel Perez Hernandez. All defendants named in the complaint are sued in their personal and official capacity.

Civ. No. 09-1491(PG)                                              Page 2

## I. Factual Background

The Court draws the following facts from Plaintiffs' complaint (Docket No. 5) and takes them as true for purposes of resolving Defendants' motion to dismiss.

### A. Facts Underlying the Searches and Seizures

On November 29, 2006, nearing midnight, Fundador Moreno Medina ("Moreno") and his consensual partner, Ivette Banuchi Rodriguez ("Banuchi"), were preparing for bed when Moreno heard noises coming from the bushes in front of his house and from the rattling of his front gate.  Looking through his bedroom window, Moreno noticed men jumping over the front gate of his residence.  Thinking it was a robbery attempt, he opened the backdoor of the house, when various armed men dressed in dark clothing rushed into the house. The armed men began searching the entire house, removing Moreno from the room where he was found.[3]  The armed men, it turns out, were police officers executing a search warrant on Moreno's property.

Banuchi was ordered to sit on her bed in her present state, that is, in her underwear and t-shirt.  Not allowed to move and guarded by one of the officers, Banuchi was very nervous and upset, thinking that they were robbing her home, and urinated on herself.  She requested and was denied permission to change into proper clothing.  The officer guarded over her for about a half-hour until Moreno was arrested and escorted away.

Before his arrest and about ten minutes after Banuchi's urination incident, Moreno was taken into the same room where he had been removed from, and was confronted by defendant Miguel Arocho Irizarry ("Arocho") who alleged

---

[3] It is not clear from the factual allegations whether this room was Moreno's bedroom or another room in the house.

to have found bullets in that room, which Arocho had searched out of Moreno's presence.  Shortly thereafter, Moreno was handcuffed, while defendant Wilfredo Morales Rivera ("Morales") searched drawers containing jewelry and cash. During the arrest and subsequent search, the officers were using foul language in a loud voice, continuing to upset Banuchi's nervous condition.   Arocho proceeded to search Moreno's pick-up truck, where he said he found $10,000.00. Moreno was then taken to the living room, while the officers continued their search of the house for approximately thirty minutes. At no time during the search of the house did any of the officers show Moreno or Banuchi a search warrant, even when he asked to see one.  Arocho only replied that it would be shown to Moreno afterwards.  Moreno was not shown a warrant until December 4, 2006, at a hearing in the Puerto Rico Superior Court of Isabela.

After the search of his house and his cars, the officers took Moreno to his mother's home where they performed another search at that house.  Moreno's eighty-three year-old mother lived with two handicapped brothers, one deaf-mute and another mentally challenged.  The officers sat Moreno in his mother's living room and began searching the house for a firearm which they never found.  The officers asked Moreno if he had any keys to the two apartments and garage behind his mother's house that he owned.  He was forced to hand over the keys and the officers brought along Moreno's deaf mute brother as a witness, while Moreno was kept watch in his mother's living room.  About fifteen minutes later, the officers executing the search of the rented apartments returned to the living room and said they had found a white powdered substance and bullets in the mother's room, but no firearms.

At around dawn on November 30, 2006, the officers provided Moreno with an inventory of the two motor vehicles: a Nissan Frontier pick-up truck and a Mitsubishi Outlander.  But at no time during the searches and seizures did the officers provide Moreno with a search warrant or other court order.  No inventory was provided for the seized cash, jewelry, camera, dish card,

lottery tickets, and other confiscated articles.[4]  Moreno realized that these articles were seized after he performed his own inventory subsequent to his release on bond when he returned to his house which had been turned upside down by the defendants.

Moreno was taken to the Ramey police precinct, where he was detained for approximately four to five hours, and was booked and subpoenaed to appear in court the following Monday.  Moreno was charged with four (4) counts of violating the Puerto Rico Controlled Substances Act: one (1) count under Article 401, one (1) count under Article 404, and two (2) counts under Article 412.  Moreno was also charged with two (2) counts of violating the Firearms Law of Puerto Rico under Article 6.01.  The charges were submitted on December 4, 2006.  The charges were allegedly based on the officers' seizure of $7,040 in cash, 344 small bags of marijuana, 11 transparent plastic bags, and 22 0.380 caliber bullets.  Moreno required the assistance of his family members in order to raise bond money for most of the charges six charges pending against him.  The criminal case was set before the Puerto Rico Superior Court of Aguadilla (the "superior court").

In the criminal case against Moreno, defendant Arocho and other officers testified that the searches and seizures that took place at Moreno's property and at his mother's house were justified by information provided by an informant.  During pre-trial proceedings, Moreno's attorney filed a motion to suppress the evidence arguing that the information used by Arocho to obtain the search warrant, which was based on an informant's tip-off, was false.  The

---

[4] Moreno lists the following items as personal property "callously and recklessly stolen and/or seized by the intervening agents/defendants without any previous court order or search warrant:"
    (1) gold chain valued at approximately $2,600.00;
    (2) gold bracelet valued at approximately $1,300.00;
    (3) $340.00 in cash found in Moreno's billfold;
    (4) $10,000.00 in cash found inside a Nissan Frontier pick-up truck;
    (5) 175 lottery tickets dated December 20, 2006;
    (6) a digital camera valued at approximately $230.00; and
    (7) a dish card valued at approximately $50.00.
(Compl. ¶ 18.)

superior court held evidentiary hearings before Judge Manuel A. Acevedo
Hernandez to rule on the motion to suppress.   The court listened to the
testimony of Arocho and other officers executing the search that night, as
well as of defense witness Juan Santo Domingo ("Santo").   Santo was at home
the day the officers or informants allegedly saw Moreno conducting illegal
drug transactions in front of his house.

On June 3, 2008, the superior court judge ordered the suppression of all
the evidence seized by the officers on November 29, 2006.   The judge ruled
that the contents of the sworn statement used by officer Arocho to obtain the
search warrant did not contain information from an informant sufficiently
describing Moreno or indicating the time or dates of Moreno's alleged drug
sales; neither did it describe Moreno's alleged clients or buyers.   The
informant also failed to describe the alleged firearms that Moreno possessed.
The judge made a finding that Arocho had stated under oath that the informant
actually never gave him information regarding any criminal act before charges
were filed against Moreno.   Moreno stated on the record that he had never
spoken with the informant before the suppression hearing.

The superior court judge concluded that the search warrant was obtained
based on Arocho's false testimony, even if it was indeed the product of an
honest mistake as Arocho submitted at the suppression hearing.   The court
inferred from the defense attorney's cross-examination that the information
provided by the informant to support the search warrant was unsubstantiated
boilerplate regularly employed to obtain a warrant based on an informant's
tip-off.   Moreover, defense witness Santo testified that he did not observe
any criminal activity taking place at the time when the informant allegedly
reported the drug transactions.   The judge found the defense witness credible,
as opposed to Arocho's testimony which was found to be false, ambiguous, and
imprecise.

The superior court concluded that due to the erroneously issued warrant,

based on Arocho's sworn statement substantially omitting details regarding the alleged drug transactions, locations, and descriptions of the buyers and sellers, the search and seizure that took place at Moreno's properties were illegal.  The court, therefore, granted the motion to suppress all the evidence seized by Arocho and the other officers.  On July 1, 2008, upon request by the district attorney's office in Aguadilla, the superior court dismissed all charges against Moreno pursuant to the Puerto Rico Rules of Criminal Procedure, P.R. Laws Ann. tit. 32, App. IV.

### B. Plaintiffs' Legal Claims

Plaintiffs argue that as a consequence of the reckless and callous acts and omissions of the named defendants, they had to endure a criminal prosecution, hire attorneys and pay $33,000.00 in attorneys' fees.  Plaintiffs also argue that the illegal seizure resulted in the loss of two (2) motor vehicles that were confiscated and sold without providing Plaintiffs procedural or substantive due process, as well as the sale of real property that had hitherto provided income and for which they now claim past and future profits.  Plaintiffs list as items of personal property illegally seized:

    (1) 2 motor vehicles valued at approximately $48,000.00;
    (2) $3,300.00 in cash;
    (3) jewelry valued at $3,800.00;
    (4) a digital camera valued at $230.00;
    (5) 175 lottery tickets;
    (6) $10,000.00 in cash taken from inside Plaintiffs' pick up truck;
    (7) a dish card valued at $80.00; and
    (8) $340.00 in billfold cash.

(Compl. ¶ 42.).[5]  Plaintiffs surmise that they have suffered a total loss of income of not less than $366,399.79, which includes the "confiscated auto

---

[5] The Court notes discrepancies in Plaintiff's valuation of his items of personal property.  First, the $3,300.00 in cash, the origins of which are not made clear, were not previously mentioned in the complaint.  Second, the jewelry previously listed add up to a total value of $3,900.00 not $3,800.00.  Third and finally, the "dish card" was previously listed at $50.00 not $80.00.

loss, rental income loss, auto dealer loss, personal property loss, attorneys fees . . . , loss in the forced sale of a commercial building and loan interest losses." (Compl. ¶ 43.). Finally, Plaintiffs claim emotional and psychological damages suffered by them and other family members, valued at not less than $1.5 million, and for which they have incurred $4,000.00 in medical expenses.

Plaintiffs plead several causes of action against the on-scene officers who directly perpetrated the constitutional violations as well as the supervisory officers who were in charge of disciplining the misconduct. Plaintiffs argue that the on-scene officers who executed the search warrant - Arocho, Wilfredo Morales Rivera, Carlos Bonet, Jose Nieves Soler and Ruben Colon Perez - did so with callous and reckless disregard for Plaintiffs' constitutional rights in violation of 42 U.S.C. § 1983 ("Section 1983"). More specifically, Plaintiffs allege that they violated their constitutional rights to be free from unreasonable searches and seizures and not to be deprived of property and liberty without due process of law under the Fourth and Fourteenth Amendments of the United States Constitution, as well as under Article II, Sections 8 and 10 of the Puerto Rico Constitution.

Plaintiffs also argue that Pedro Toledo, Jose A. Morales, Angel Perez Hernandez are liable under Section 1983 under a theory of supervisory liability. First, Plaintiffs premise liability upon their failing to "implement existing disciplinary systems intended to detect unconstitutional behavior such as that evidenced by defendants" and for allowing the on-scene officers to continue their duties despite knowledge of their records and propensities to disregard the constitutional rights of citizens. (See Compl. ¶ 49.) Had the supervisory officers implemented the existing disciplinary system, argue Plaintiffs, the on-scene officers' violations would have been avoided because their previous conduct would have warranted their dismissal or reassignment. Second, Plaintiffs argue that the supervisory officers

failed in their duty to control and discipline the officers executing the search warrant as they had actual or constructive knowledge of their subordinates' unlawful pattern of behavior and did nothing to remedy it. Third, Plaintiffs claim that the supervisory officers should be held liable because they were reckless and callous in the training of the offending on-scene officers.

In addition to their Section 1983 claims, Plaintiffs plead supplementary claims for constitutional violations under Article II, Sections 8 and 10 of the Puerto Rico Constitution, as well as for a negligence cause of action under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141. Finally, for both the federal and state law claims, Plaintiffs ask for punitive damages.


## II. Rule 12(b)(6) Standard of Review

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief. . . . This short and plain statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations and quotation marks omitted).

Motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) are subject to the same standard of review. See Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). When ruling on a motion to dismiss for failure to state a claim, a district court "must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any

cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). Courts "may augment the facts in the complaint by reference to (i) documents annexed to the complaint or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan, 513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks omitted).

"Yet [the Court] need not accept as true legal conclusions from the complaint or naked assertions devoid of further factual enhancement." Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009)). Although a complaint attacked by a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted).

Moreover, "even under the liberal pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court has . . . held that to survive a motion to dismiss, a complaint must allege a plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Twombly, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Twombly, 550 U.S. at 555 (internal citations and quotation marks omitted). "Determining whether a complaint

Civ. No. 09-1491(PG)                                              Page 10

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

### III. Discussion

Defendants argue in their motion to dismiss that the claims against them should be dismissed because Plaintiffs' Section 1983 and Puerto Rico negligence claims are time-barred.  They also submit that Plaintiffs fail to state a claim under the Fourteenth Amendment; that plaintiff Banuchi does not have standing to sue under Section 1983; and that plaintiffs Banuchi and Moreno do not have standing to sue under Section 1983 for the search and seizure of Moreno's mother's home.   Finally, Defendants add that any supplemental state law claims should also be dismissed.

### A. Statute of Limitations under Section 1983

"Affirmative defenses, such as statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." Santana-Castro v. Toledo-Davila, 579 F.3d 109, 114-15 (1st Cir. 2009)(internal quotation marks and citations omitted).  "Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations or equitable estoppel, dismissal is appropriate." Id. at 115.

Claims under Section 1983 borrow from the forum state's statute of limitations for personal injury claims. See id. (citing Rodriguez-Garcia v.

<u>Municipality of Caguas</u>, 354 F.3d 91, 96 (1st Cir. 2004).  That is because in Puerto Rico, the "limitations period of actions is a substantive, not a procedural, matter[.]" <u>Id.</u> (<u>quoting</u> <u>Rodriguez v. Suzuki Motors Corp.</u>, 570 F.3d 402, 406 (1st Cir. 2009)).  The parties in the case at bar agree that Puerto Rico's one-year prescriptive period governing tort actions is the statute of limitations applicable to Plaintiffs' claims. <u>See</u> P.R. Laws Ann. tit 31, § 5298(2).

Even though the Court borrows from Puerto Rico's statute of limitations for Section 1983 claims, "[i]t is federal law, however, that determines when the statute of limitations begins to run." <u>Gorelik v. Costin</u>, No. 09-1192, 2010 WL 1999591, at *3 (1st Cir. May 20, 2010) (<u>citing</u> <u>Moran Vega v. Cruz Burgos</u>, 537 F.3d 14, 20 (1st Cir. 2008)); <u>see also</u> <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.")(emphasis in original)).  "Section 1983 claims generally accrue when the plaintiff knows, or has reason to know of the injury on which the action is based, and a plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." <u>Id.</u> (<u>citing</u> <u>Moran Vega</u>, 537 F.3d at 20).  The way the Supreme Court has articulated the standard rule of accrual is that accrual begins when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. <u>See</u> <u>Kato</u>, 549 U.S. at 388.

Finally, there are three ways "by which prescription of tort actions can be interrupted or tolled under Puerto Rico's Civil Code, although none are applicable here: (1) by their institution before the courts; (2) by extrajudicial claim of the creditor; and (3) by any act of acknowledgment of the debt by the debtor." <u>Cintron-Luna v. Roman-Bultron</u>, 668 F. Supp. 2d 315, 319 (citations omitted).  The Court refers to the Puerto Rico tolling rules because "[w]hen a § 1983 action is brought in Puerto Rico, federal law borrows

from Puerto Rico tolling law so long as the Puerto Rico law is consistent with underlying federal policy." <u>Nieves-Vega v. Ortiz-Quinones</u>, 443 F.3d 134, 137 (1st Cir. 2006).

Defendants argue that the statute of limitations in this case began to run on November 29, 2006, the date Moreno was allegedly unlawfully arrested, detained for several hours, and his place of abode, motor vehicles, mother's residence, rental properties, and other items of personal property were searched and seized. Since Plaintiffs filed their complaint on June 1, 2009, two and a half years after the unlawful searches and seizures, Defendants argue that Plaintiffs' claims exceed Puerto Rico's one-year statute of limitations. As Plaintiffs did not toll the limitations period, Defendants call for the dismissal with prejudice of Plaintiffs' claims against them.

Plaintiffs respond by raising, for the first time, the argument that their Section 1983 claim is analogous to the tort action for malicious prosecution, and thus does not begin to prescribe until the case has ended favorably for the accused. <u>See</u> Pls.' Opp. Mot. Dismiss 2 (<u>quoting</u> <u>Torres v. Superintendent of Police of Puerto Rico</u>, 893 F.2d 404, 407 (1st Cir. 1990)). Therefore, Plaintiffs contend that since Puerto Rico's case against Moreno was dismissed on July 1, 2008, the complaint, dated June 1, 2009, was filed within the one-year statute of limitations. After stating the elements of the tort of malicious prosecution, Plaintiffs conclude that the complaint proves the required elements. Plaintiffs add that it was not until the suppression hearing, not at the time of Moreno's arrest, that they first became aware of the negligent way in which Defendants carried out their investigation, of who was responsible for what and to what extent, and thus of the constitutional violations arising as a consequence. In Supreme Court parlance, it was only when they acquired knowledge of the defendant officers' bungled investigation and search warrant at the suppression hearing, which led to the dismissal of the criminal charges, that they had a complete and present cause of action for

malicious prosecution.

In anticipation of this counter-argument, Defendants set forth in their motion to dismiss that while Plaintiffs might attempt to argue that their claims began to accrue when the criminal charges against Moreno were dismissed, it is "settled law that 'the statute of limitations upon a Section 1983 claim seeking damages for false arrest . . . where arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process.'" (Def.'s Mot. Dismiss 7-8.)(quoting Kato, 549 U.S. at 397).  Because Plaintiffs filed the present action two and a half years after the unlawful searches and seizures took place, and two years and five months after being criminally charged, Defendants argue that it exceeds the one-year prescriptive period and must be dismissed.

The Court concludes that, except for a malicious prosecution claim under the Fourth Amendment, all of Plaintiffs' Section 1983 claims stemming from the illegal searches and seizures and subsequent criminal proceedings, and pegged to the Fourth and Fourteenth Amendments, are time-barred.[6]  As a general federal rule of accrual, Plaintiffs claims began to accrue at the time of injury or wrongful act: the illegal searches and seizures on November 29 and 30, 2006.  Taken in the light most favorable to them, Plaintiffs had one year from November 30, 2006, to sue for personal injuries caused by the deprivation of constitutional rights arising from the searches and seizures of Plaintiffs' persons and property, including Moreno's arrest and post-arrest deprivations of liberty.

While Plaintiffs' claims "have foundered on the shoals of the statute of limitations, one claim escapes this prohibition." Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001).  Only a malicious prosecution claim under the

---

[6] Finding all of Plaintiffs' claims under the Fourth and Fourteenth Amendments time-barred, save for a malicious prosecution claim, the Court need not entertain whether they are cognizable and state a plausible entitlement to relief.  Thus, neither does the Court need to delve into Defendants' standing arguments.

Fourth Amendment, if properly pled, would begin to accrue on July 1, 2008, the date the criminal charges against Moreno were dismissed, and therefore survive Puerto Rico's one-year statute of limitations. See id. ("[A] cause of action for malicious prosecution does not accrue until the termination of the criminal proceedings.") (citations omitted)); e.g., Rodriguez Esteras v. Solivan Diaz, 266 F. Supp. 2d 270, 278-79 (D.P.R. 2003); accord Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3 (1st Cir. 1995) (finding that appellants' section 1983 claims did not accrue until their criminal prosecutions ended in acquittals)).  It remains to be seen whether Plaintiffs state a cognizable claim for malicious prosecution.

Before approaching the subject of malicious prosecution, the Court notes that the task of deciphering Plaintiffs' Section 1983 claims was made all the more difficult by the parties' minimal efforts at argumentation.  Plaintiffs raised a malicious prosecution claim almost as an afterthought in response to Defendants' motion to dismiss.  Furthermore, they failed to prove in cogent fashion how they met the elements of this common law tort claim.  Citing scant authority, Plaintiffs merely set forth the conclusory statement that their complaint "compl[ies] with all the above-mentioned criteria for constituting and filing a tort-action for malicious prosecution. . . ." (Opp. Mot. Dismiss 7.) Defendants, as well, are guilty of relying on the previous argument that a claim for false arrest accrues at the time of arrest without explaining how the facts even allow for such a claim and without submitting a reply that definitively refutes a claim for malicious prosecution.  The Court is forced to abandon the parties' briefs and do their homework for them.

Whether Plaintiffs make out a malicious prosecution claim, as Plaintiffs aver, or a false arrest claim, as Defendants aver, is important because to determine the applicable accrual rule governing a Section 1983 claim, the Court "look[s] to the common law cause of action most closely analogous to the constitutional right at stake. Calero-Colon, 68 F.3d 1, 3 (1st Cir. 1995)

(citing Heck v. Humphrey, 512 U.S. 477, 484 (1994)).  The Supreme Court has repeatedly noted that Section 1983 "creates a species of tort liability" and thus "to determine whether there is any bar to the present suit, [the Court] look[s] first to the common law of torts." See Heck, 512 U.S. at 483.  The Court finds that the cause of action most closely analogous to the constitutional right that Plaintiffs argue is at stake - the abuse of legal process - is malicious prosecution.  Nevertheless, while surviving the statute of limitations, a malicious prosecution cause of action ultimately "founders on the shoals" of applicable case law.

## B. Malicious Prosecution under Section 1983

     The First Circuit has "assume[d] without deciding that malicious prosecution can, under some circumstances, embody a violation of the Fourth Amendment and thus ground a cause of action under Section 1983." Nieves, 241 F.3d at 54.  The Supreme Court has also "assum[ed] without deciding that such a claim is cognizable under § 1983" although the petitioner in that case did not make one. Kato, 549 U.S. at 390 n.2 (noting that the Supreme Court has "never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983" and that it refused to do so then).  The First Circuit has characterized it as "[a]n open question whether the Constitution permits the assertion of a section 1983 claim for malicious prosecution on the basis of an alleged Fourth Amendment violation."[7] Nieves, 241 F.3d at 54.  While a

_____

[7] Because the First Circuit has characterized a Section 1983 malicious prosecution cause of action as "an open question," some lower courts have indicated that defendants would be entitled to qualified immunity on the grounds that the constitutional right at issue is not sufficiently "clearly established" to grant state officers notice that their conduct is violative of that right. See, e.g., Hernandez-Lopez v. Pereira, 380 F. Supp. 2d 30, 33 (D.P.R. 2005) ("[s]uch uncertainty in the legal landscape would at least entitle movants to qualified immunity precluding a § 1983 action for damages against them based on said claim."); see also Rodriguez-Mateo v. Fuentes-Agostini, 66 Fed. App'x 212, 214 (1st Cir. 2003) ("Such uncertainty in the legal landscape entitled state actors to qualified immunity.") Contra Rodriguez Esteras v. Solivan Diaz, 266 F. Supp. 2d 270, 282 (D.P.R. 2003) ("Since the parameters of the right to be free from malicious prosecution were sufficiently clear at the time of the alleged incident, Defendants are not entitled to qualified

malicious prosecution claim under the Fourth Amendment, discussed in more detail below, remains viable under Supreme Court and First Circuit precedent, Plaintiffs' attempt to peg such a claim to the Due Process Clause of the Fourteenth Amendment has been definitively rejected and must therefore fail.[8] See Nieves, 241 F.3d at 53 ("It is perfectly clear that the Due Process Clause cannot serve to ground the [plaintiffs'] federal malicious claim.").

Under the Fourth Amendment, "[t]o establish malicious prosecution under section 1983, a plaintiff must establish the elements of malicious prosecution under state law and the deprivation of a federal constitutional right." Colon-Andino v. Toledo-Davila, 634 F. Supp. 2d 220, 234 (D.P.R. 2009) (citing Nieves, 241 F.3d at 54; Britton, 196 F.3d at 28)).

### 1. Malicious Prosecution Under State Law: Common Law Elements

Under Puerto Rico common law, a claim for malicious prosecution requires that: (1) a criminal action was initiated and instigated by defendants; (2) a criminal action terminated in favor of plaintiff; (3) the defendants acted *with malice and without probable cause*; and (4) plaintiff suffered damages. Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 409 n.7 (1st

---

immunity."). However, since qualified immunity is an affirmative defense that Defendants failed to raise, and since the Court finds that Plaintiffs failed to state a cognizable malicious prosecution claim in either case, as discussed  the thorny issue of Defendants' qualified immunity need not be further addressed.

[8] Though a plurality opinion of the Supreme Court, a majority of the Justices in Albright v. Oliver, 510 U.S. 266 (1994), held that malicious prosecution claims were not viable substantive due process claims under the Fourteenth Amendment. See M. Schwartz, Section 1983 Litigation 66 (2d ed. 2008); accord Nieves, 241 F.3d at 53-54 ("We have followed the Court's lead in this respect . . . and we hew to that line today.") (citing Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) (First Circuit case holding that there is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution)).  Neither are they viable procedural due process claims because state law provides an adequate remedy for malicious prosecution. See Torres v. Superintendent of Police of Puerto Rico, 893 F.2d 404, 411 (1st Cir. 1990) (holding that Puerto Rico law affords a cause of action for malicious prosecution under Article 1802 of the Puerto Rico Civil Code and that "where state law affords an adequate remedy, plaintiffs may not also have a procedural due process claim for malicious prosecution under Section 1983.")

Civ. No. 09-1491(PG)                                           Page 17

Cir. 1990) (emphasis added); accord Solivan-Diaz, 266 F. Supp. 2d at 270 (District of Puerto Rico case setting forth the same elements).  Because prongs (2) and (4) are undisputed, the Court must only concern itself with prongs (1) and (3), that is, whether Defendants initiated and instigated the criminal action against Moreno and if they acted with malice and without probable cause.  The Court observes that, as discussed previously, Plaintiffs merely presented the unsubstantiated conclusion that they proved the common law elements without explaining how.  However, after careful analysis and viewing the facts in the light most favorable to Plaintiffs, the Court cannot conclude that they have made a colorable showing of these two critically important elements of the tort.

The Court cannot see how it can properly be said that Defendants "initiated and instigated" the criminal action by way of a defective search warrant, subsequently leading to the discovery of incriminating evidence, which then established probable cause for Moreno's arrest. See Santana-Castro v. Toledo-Davila, 579 F.3d 109, 117 n.9 (1st Cir. 2009) (noting that malicious prosecution cannot be implicated on the facts because the officers, although they arrested plaintiff, were not responsible for "bringing charges" against him). But cf. Colon-Andino 634 F. Supp. 2d at 235 (malicious prosecution claim viable in case of an allegedly fabricated complaint, defective search warrant based on false information without probable cause, and planted evidence leading to unlawful arrest and initiation of criminal proceedings); Solivan Diaz, 266 F. Supp. 2d at 278 (malicious prosecution viable in case where officers allegedly lied to magistrate judge about evidence found when they arrested plaintiff and covered up exculpatory evidence at three separate preliminary hearings).  As in the factually analogous First Circuit case of Meehan v. Town of Plymouth, the plaintiff's arrest here was also made during the execution of a search warrant.  As the court observed in Meehan, "[w]hile a malicious prosecution claim could conceivably be predicated upon the

issuance of a search warrant, we are not inclined to consider such a claim because [the plaintiff] does not even articulate one." <u>Meehan</u>, 167 F.3d at 90 n.3. Plaintiffs here do not articulate one either, nor explain how they can base a malicious prosecution claim on a search warrant obtained with false information. As noted before, they do not clearly articulate a malicious prosecution claim at all. Presumably, Plaintiffs would have to show that the police officer implicated with acquiring the bad search warrant, officer Arocho, who is not one of the presently moving Defendants and whose acts cannot be imputed to them, told the informant to lie about what he saw in order for the warrant to issue and purposefully trigger a criminal action against Moreno. Plaintiffs do not make this showing and it would be pure conjecture for the Court to arrive at this inference.

It would also be sheer speculation to suggest that Arocho or any of the other officers were motivated by malice against Moreno or Banuchi. Plaintiffs have not posited a theory for any ill motivation, nor have they made any effort to show that the officers knew Plaintiffs at all, or wished a prosecution against them out of spite. They have simply set forth a factual scenario whereby either defendant Arocho was negligent in procuring his informant's report or the informant was negligent in carrying out his investigation. Plaintiffs do not attribute any falsehoods upon which the search warrant may have been based to any improper purpose that would cast doubt upon any of the officer's intentions. Falsehood as we all know can also be the product of negligence, faulty memory, mistake, or any other human error that cannot reasonably call into question the innocence of its proponent.

Moreover, while any hint of actual malice is notably missing from the complaint, there is also no sign that Defendants acted without probable cause. While the search warrant itself may have lacked probable cause, rendering the incriminating evidence fruits of the poisonous tree subject to the exclusionary rule, the same rules that apply to criminal cases do not always

apply in the civil context.  Specifically, in the context of a civil malicious prosecution claim, the exclusionary rule does not apply to the effect that it would nullify the officers' probable cause to arrest Moreno.  <u>See</u> <u>Pennsylvania Bd. of Probation & Parole v. Scott</u>, 524 U.S. 357, 365 & n. 4 (1998) (noting that the exclusionary rule generally has been held to apply only in criminal proceedings); <u>United States v. Calandra</u>, 414 U.S. 338, 347-48 (1974) (stating that the exclusionary rule is a remedial device intended to deter future unlawful police conduct rather than a personal constitutional right); <u>see, e.g.</u>, <u>Vigeant v. United States</u>, 245 Fed. App'x 23, 24-25 (1st Cir. 2007) (defective search warrant not supported by probable cause that lead to vacated conviction did not also render arrest of felon in possession of firearms defective for lack of probable cause in Federal Tort Claims Act case alleging false arrest, false imprisonment and malicious prosecution); <u>Townes v. City of New York</u>, 176 F.3d 138, 149 (2d Cir. 1999) (lack of probable cause for a stop and search did not vitiate probable cause to arrest plaintiff upon discovery of handguns in Section 1983 civil rights action)).  Defendants had probable cause to arrest Moreno, within the context of a civil Section 1983 case, for possession of illegal drugs and firearms.  Thus, even taking Plaintiffs' facts as true, the Court concludes that there is no indicia of evidence pointing to police officers acting with malice or without probable cause in the aim of initiating and instigating a prosecution against Moreno.

## 2. Federal Law Requirements

The Supreme Court has noted the "embarrassing diversity of judicial opinion" with regard to the extent to which a malicious prosecution claim is actionable under Section 1983, in particular whether a malicious prosecution tort under state law standing alone can violate the Constitution. <u>See</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 270-71 n.4 (1994) (plurality opinion) (internal

quotation marks and citation omitted).  The First Circuit, answering in the negative, requires that the alleged malicious prosecution result in a deprivation of liberty "consistent with the concept of a seizure." Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999) (internal quotation marks and citation omitted).  The appellate court has given much importance to the federal prong of the analysis by stating that "the essential elements of actionable section 1983 claims derive first and foremost from the Constitution itself, not necessarily from the analogous common law tort." Calero-Colon, 68 F.3d at 4.

Under the federal standard requiring Plaintiffs show a deprivation of liberty akin to a seizure, the Court must first determine whether the alleged seizure occurred "pursuant to legal process" which generally means either by way of an arrest warrant or a subsequent charging document. See Nieves, 241 F.3d 46 at 54.  "Generally, the offending legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." Id.  As in the First Circuit's Nieves v. McSweeney case, here the plaintiff was arrested without a warrant "and, thus, their arrests - which antedated any legal process - cannot be part of the Fourth Amendment seizure upon which they base their section 1983 claims." Id. From Plaintiffs' factual allegations it is apparent that Moreno was not arrested pursuant to an arrest warrant, but rather as a result of incriminating evidence seized pursuant to a defective search warrant.  Any challenge to the legality of his arrest as a Fourth Amendment seizure would have to lie under a false arrest cause of action, which the Court previously noted would be time-barred.  Moreover, any attempt to base a Section 1983 malicious prosecution claim upon a warrantless arrest must be rejected because it is not made pursuant to legal process and thus could not

be considered as initiating and instigating a criminal action under the requisite Puerto Rico law elements. See, e.g., Mehaan v. Town of Plymouth, 167 F.3d 85, 89-90 (1st Cir. 1999) (plaintiff could not bring a malicious prosecution claim based on his warrantless arrest because it did not constitute "the initiation of proceedings" under Massachusetts law).

Since plaintiff Moreno was not arrested pursuant to an arrest warrant, "[t]his leaves [Moreno] with the task of showing some *post-arraignment* deprivation of liberty, caused by the application of legal process, that approximates a Fourth Amendment seizure." Nieves, 241 F.3d at 54 (emphasis in original). As the First Circuit in Nieves phrased the question, the court must ask if bail, the stress and anxiety of knowing that serious criminal charges are pending and reputations have been sullied, and appearing before criminal court in the pretrial period, are altogether strictures which in the aggregate constitute a Fourth Amendment seizure sufficient to ground a Section 1983 malicious prosecution claim? See id. at 54-55. The Courts answers no.

In reaching this conclusion, the Court asks whether the officers, by means of physical force or show of authority, have in some way restrained Moreno's liberty. See id. at 55. (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). As in Nieves, here there was no use of physical force during the post-arraignment period and the conditions of pretrial release were run-of-the-mill conditions that do not fit comfortably within the recognized parameters of a Fourth Amendment seizure. See id. Neither does Moreno even allege that he suffered a cognizable post-arraignment deprivation of liberty by stating, for example, that he was detained pre-trial, subjected to restrictions on travel, required to post an infeasible bond, forced to endure a criminal trial, or otherwise exposed to any significant deprivation of liberty. At worst, Moreno had to pay about $10,000.00 for bail, which he did with financial assistance from his family members. See Compl. ¶ 21. Like other Section 1983 malicious prosecution cases in this District predicated

upon a warrantless arrest, the Court holds that the pre-trial release conditions imposed on plaintiff Moreno do not constitute a Fourth Amendment seizure. See Cabrera-Negron v. Municipality of Bayamon, 419 F. Supp. 2d 49, 55 (D.P.R. 2006) (dismissing Section 1983 malicious prosecution claim because plaintiff, who only had to attend court twice and did not endure trial, could not establish a Fourth Amendment seizure). But see Solivan-Diaz, 266 F. Supp. 2d at 280 (allowing same claim to proceed because plaintiff was detained after he was unable to post a $140,000.00 bond). To hold otherwise would result, as the First Circuit noted, in virtually every criminal defendant being deemed seized pending the resolution of charges. Nieves, 241 F.3d at 55. Allowing such an unintended result would mean that nearly every malicious prosecution claim brought by an arrestee, many of which should appropriately be left to the state courts, could be brought before a federal court under the aegis of Section 1983. See id. The Court agrees that this is a much too ambitious view of the law and concludes that the circumstances here do not warrant such a consequential determination.

### C. Supplementary State Law Claims

Lastly, the Court should decline to exercise supplemental jurisdiction over state law claims when all federal claims are dismissed. See Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998) ("the balance of factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.") Since all of Plaintiffs' federal claims are dismissed, the Court will not exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

### IV. Conclusion

While the Court does not condone the improper conduct of the defendant

Civ. No. 09-1491(PG)                                              Page 23

officers, for the reasons explained at length above, the Court **GRANTS** Defendants' motion to dismiss (Docket No. 12).  For most of Plaintiffs' viable Section 1983 claims, "[a] ripe civil rights suit was left to rot." Nieves, 241 F.3d at 57.  All of Plaintiffs' Section 1983 claims pursuant to the Fourth and Fourteenth Amendments, except for a malicious prosecution claim, are time-barred and thus must be **DISMISSED WITH PREJUDICE.** Plaintiffs' malicious prosecution claim pursuant to the Fourth and Fourteenth Amendments fails to state a claim upon which relief can be granted under the case law outlined above and thus must also be **DISMISSED WITH PREJUDICE.**  As no federal claims remain, the Court declines to exercise supplemental jurisdiction over any pending state law claims, which are **DISMISSED WITHOUT PREJUDICE.**  The Court's reasoned decision, which closes this case, applies not only to the presently moving Defendants but to all of the named defendants in Plaintiffs' complaint.


          **IT IS SO ORDERED.**

          In San Juan, Puerto Rico, June 9, 2010


                                        S/ JUAN M. PÉREZ-GIMÉNEZ
                                        JUAN M. PÉREZ-GIMÉNEZ
                                        UNITED STATES DISTRICT JUDGE